UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| PPOA HOLDINGS, INC., *et al.*, | Case No. 10-10711-BKC-JKO |
| | (Jointly Administered) |
| Debtors. _____/ | |
| PPOA HOLDINGS, INC., *et al.*, | |
| Plaintiffs, | Adv. Pro. No. _____ |
| v. | |
| MICHAEL FRANK, an individual, | |
| Defendant. _____/ | |

### VERIFIED COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF

PPOA HOLDINGS, INC. ("PPOA") and its subsidiaries who are debtors and debtors in possession (collectively, the "Debtors") sue MICHAEL FRANK, individually ("Frank"), for injunctive relief pursuant to 11 U.S.C. §105(a) and Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, seeking to enjoin prosecution of the action commenced on December 6, 2010 in the Superior Court of Justice of Ontario by Frank, pursuant to the Class Proceedings Act of 1992 against (1) Farlie, Turner & Co., LLC; (2) Bayshore Partners, LLC; (3) R. Patrick Caldwell; (4) Stephen Giordanella; (5) Larry Moeller; (6) Neil E. Schwartzman; (7) Jason A. Williams; (8) Brian L. Stafford; (9) Henry H. Shelton; (10) Frank E. Jaumot; (11) Keith J. Engel; (12) Richard P. Torykian, Sr.; (13) Charles E. Peters, Jr.; and (14) Deon Vaughan (the "Statement of Claim").

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(a) and (e), in that it arises in and relates to the Debtors' chapter 11 cases pending before this Court.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

4. The statutory predicates for the relief sought are 11 U.S.C. §§105(a) and Bankruptcy Rule 7001.

## THE PARTIES

5. Defendant Frank is a shareholder of PPOA and current resident of Thornhill, Ontario, Canada.

6. PPOA Holdings, Inc., f/k/a/ Protective Products of America, Inc., was a publicly traded company on the Toronto Stock Exchange, and together with its subsidiaries, was engaged in the design, manufacture and marketing of advanced products used to provide ballistic protection for personnel and vehicles in the military and law enforcement markets. The address for the Debtors is c/o Ahearn Jasco & Company, P.A., Attn. Frank E. Jaumot, CPA, 190 Southeast 19th Avenue, Pompano Beach, Florida 33060.

7. Bayshore Partners, LLC ("Bayshore") is an investment banker located in Fort Lauderdale, Florida, United States.

8. Farlie Turner & Co. ("Farlie Turner") is an affiliate of Bayshore and an investment bank based in Fort Lauderdale, Florida, United States.

9. Frank Jaumot is a certified public accountant licensed by the State of Florida and sole remaining director of each of the Debtors. Jaumot has been a director since January of 2009.

In June of 2010 the Debtors retained Jaumot as the Chief Restructuring Officer, in order to facilitate the post-sale wind down of the Debtors.

10. Neil E. Schwartzman ("Schwartzman"), Jason A. Williams ("Williams"), and Deon Vaughan ("Vaughan") are former officers of PPOA.

11. R. Patrick Caldwell ("Caldwell"), Larry Moeller ("Moeller"), Henry H. Shelton ("Shelton"), Keith Engel ("Engel"), Richard P. Torykian, Sr. ("Torykian"), and Charlie E. Peters, Jr. ("Peters"), are former directors of PPOA.

12. Stephen Giordanella ("Giordanella") and Brian Stafford ("Stafford") are former officers and directors of PPOA, and Moeller is a former officer of PPOA's Canadian predecessor (Schwartzman, Williams, Vaughan, Caldwell, Moeller, Stafford, Shelton, Engel, Torykian, Peters, and Giordanella collectively referred to as the "Former Officers and Directors").

## BACKGROUND

13. On January 13, 2010, the Debtors filed voluntary bankruptcy petitions under Chapter 11 of Title 11 of the United States Code (the "Petition Date").

14. On January 27, 2010, the Office of the United States Trustee (the "UST") appointed the Office Committee of Unsecured Creditors [D.E. # 82].

15. On February 22, 2010, the Court entered an order authorizing the sale of substantially all of the Debtors' assets to Protective Products Enterprises (an affiliate of Sun Capital) ("Sale Order") [D.E. # 133].

16. Prior to the entry of the Sale Order, in connection with the sale, on February 1, 2010, the Debtors served Frank with the following:

> a) Emergency Motion for An Order Establishing Notification and Hearing Procedures for Trading In Claims and Equity Securities[D.E. #14];

b) Order Establishing Notification and Hearing Procedures for Trading In Claims and Equity Securities [D.E. #51];

c) Notice of Auction and Sale Hearing [Pursuant to D.E. #46];

d) Order Granting Motion to Establish Limited Notice [D.E. #56]; and

e) Notice of Commencement [D.E. #64];

See Certificate of Service, [D.E. # 91].

17. Even prior to service of the Notice of Auction and Sale Hearing, Frank was well aware of the bankruptcy filing and PPOA's intent to market its assets for sale or additional financing.

18. In addition to speaking with PPOA's bankruptcy counsel, Frank had repeated contact with Bayshore starting as early as Summer of 2009 regarding PPOA's need to find financing or a buyer. These conversations continued even after the closing on the sale of PPOA's assets.

19. Bayshore encouraged Frank's participation and interest in PPOA's assets and requested that he sign a confidentiality agreement so that he could be provided with due diligence materials.

20. Frank refused to sign a confidentiality agreement, however, Frank requested Bayshore contact various financial intermediaries in Canada including Geosam Investments Limited ("Geosam"). Geosam executed a confidentiality agreement, and was provided with the confidential investment memorandum. After analysis Geosam advised Bayshore that it intended to pass on this opportunity and would not participate in any transaction with the Debtors.

21. Frank also requested that Bayshore contact two large equity holders who may be interested in providing additional cash infusion to PPOA. One equity holder, Nikusa, worked with Bayshore and extensively negotiated a term sheet to provide for additional debenture

financing. However, when the term sheet was provided to the Debtors' senior secured lender for approval, the secured senior lender refused its consent.

22. Among other things, the Sale Order found that "all known interested entities" received "actual written notice of and a reasonable opportunity to object or be heard with respect to the [sale, auction, etc.]."

23. The closing on the sale of the Debtors' assets in accordance with the Sale Order occurred on March 5, 2010 (the "Closing").

The Frank Action.

24. On December 6, 2010, defendant Frank filed a *Statement of Claim* in Ontario against the Former Officers and Directors, Bayshore, Jaumot, and Farlie & Turner. Frank did not obtain prior leave of this Court to bring this purported class action. Frank asserts various claims, including but not limited to:

    i. the individual defendants authorized, permitted and acquiesced in the release of certain documents by PPOA that contained misrepresentations, as defined by a securities act;

    ii. the individual defendants did not conduct a reasonable investigation into and had reasonable grounds to believe that certain statements contained misrepresentations, before the misrepresentations were actually made;

    iii. the individual defendants are liable for alleged misrepresentations;

    iv. the alleged misrepresentations were made negligently, or in the alternative, recklessly or fraudulently;

    v. the individual defendants are liable for failures to make timely disclosure of certain alleged material changes;

vi. Bayshore, Farlie Turner, Jaumot and the Former Officers and Directors conspired to conceal from PPOA's shareholders positive material information relating to PPOA's business, affairs and operations;

vii. Bayshore and Farlie Turner intentionally and unlawfully interfered with Frank's and other Class Members' economic relations with and interests in PPOA; and

viii. Bayshore, Farlie Turner, Jaumot and the Former Officers and Directors are jointly and severally liable for full amount of damages assessed in the action.

25. Frank specifically claims damages in the amount of $100 million and punitive damages in the amount of $20 million. A true and correct copy of the Statement of Claim is attached hereto as **Exhibit "A."**

Bayshore's Indemnification Rights.

26. On February 10, 2010, after previously entering an interim order, the Court entered a final order approving the Debtors' employment of Bayshore to provide post-petition investment banking and financial advisory services to the Debtors in connection with any potential restructuring of the Debtors. [D.E. # 126]. A true and correct copy of June 16, 2009 engagement letter between PPOA and Bayshore ("Bayshore Engagement Letter"), the terms of which were approved by the Court, is attached hereto as **Exhibit "B ."**

27. The Bayshore Engagement Letter contains several provisions whereupon the Debtors agreed to indemnify and hold Bayshore harmless against losses arising out of Bayshore's engagement by the Debtors, except for any claims arising out of bad-faith, gross

negligence, self-dealing, breach of fiduciary duty, or willful misconduct, as determined by a *final order* of the Court.

28. The Debtors submit that such indemnification is standard in the specialized investment banking industry and that the provision of such indemnification by the Debtors is fair and reasonable considering Bayshore's qualifications and the expectations of other investment bankers or special financial advisors in connection with engagements of this scope and size.

29. On Feb 8, 2011, Bayshore filed its *(I) First Interim Application of Bayshore Partners, LLC for Approval and Allowance of Payment of Indemnification Fees and Costs Incurred for the Period December 6, 2010 Through and Including February 8, 2011 and (II) Motion for an Order Conditioning All Plan Distributions Upon Prior Allowance and Payment to Bayshore Partners, LLC of Indemnification Fees and Costs* (the "Bayshore Indemnification Fee Application"). [D.E. # 408]. The Bayshore Indemnification Fee Application incorporates by reference Farlie Turner. A true and correct copy is attached hereto as **Exhibit "C."**

30. The Bayshore Indemnification Fee Application requests $23,258.83 for costs incurred in defending Frank's class action in Canada. Bayshore requests that the plan ensure that Bayshore's indemnification claim for fees and expenses (as valid administrative expenses) are paid prior to any distributions are made to unsecured creditors (i.e. making all distributions pursuant to the plan conditioned on the allowance and payment of Bayshore's indemnification claim).

Jaumot's Indemnification Rights.

31. On June 17, 2010 the Bankruptcy Court entered an Order authorizing the Debtors to retain Jaumot as their Chief Restructuring Officer. [D.E. # 250]. The terms of engagement also include indemnification provisions, whereby the Debtors agree to indemnify and hold

7

Jaumot (including other personnel retained by Jaumot) harmless from and against all claims, liabilities, losses and damages arising out of services he renders, and to reimburse Jaumot for legal or other expenses reasonably incurred by him in connection with the defense of such claims, except for any claims arising from gross negligence, other acts of misconduct or bad faith in performance under the agreement. A true and correct copy of the Engagement letter is attached hereto as **Exhibit "D."**

32. On February 8, 2011, Jaumot filed his *Frank E. Jaumot, Chief Restructuring Officer's Motion for Allowance of Administrative Expense Claim* ("Jaumot's Indemnification Motion") [D.E. #404]. Jaumot notes that he had made demand for indemnification upon the Debtors in accordance with his engagement letter and retention order, after being served with Frank's Statement of Claim, and now seeks the allowance of an administration expense claim on account of the indemnification.

The Former Officers and Directors Indemnification Rights.

33. PPOA's Bylaws provide that PPOA shall indemnify and hold harmless, to the fullest extent permitted by law, its officers, directors, employees, or agents who was or is made or is threatened to be made a party, or is otherwise involved in any action, suit or proceeding, against any and all liability and loss suffered or incurred and expenses reasonably incurred by such person. A true and correct copy of the Bylaws is attached hereto as **Exhibit "E."**

34. Any fees and/or costs incurred by the Former Officers and Directors in the defense of Frank's Statement of Claim, and any damages that Frank is awarded against Former Officers and Directors affect the administration of the bankruptcy itself by virtue of the indemnification provisions in the PPOA Bylaws.

35. Any fees and/or costs incurred by the Former Officers and Directors, Jaumot or Bayshore in the defense of Frank's Statement of Claim, and any damages that Frank is awarded against the Former Officers and Directors, Jaumot or Bayshore affect the administration of the bankruptcy itself by virtue of the indemnification provisions in both Jaumot's and Bayshore's engagement agreements and the Debtors' Bylaws.

36. Moreover, any objections that Frank had to the sale or otherwise should have been timely brought before this Court, as Frank was well aware of the bankruptcy case and PPOA's efforts to market its assets, and he received the requisite notice. Frank's commencement of a groundless class action in a foreign jurisdiction will subject the estate of the Debtors with large, unknown administrative expenses and inhibit the ability of the Committee to confirm its plan and wind down the cases.

## COUNT I
## (REQUEST FOR PERMANENT INJUNCTIVE RELIEF)

37. Plaintiff realleges paragraphs 1 through 36 as if full set forth herein.

38. Plaintiff seeks preliminary and permanent injunctive relief enjoining Frank from prosecuting the class action in Canada against Bayshore, Farlie Turner, Jaumot, and the Former Officers and Directors to the extent that the suit affects the bankruptcy itself.

39. The Debtors have already suffered immediate and irreparable harm by the institution of Frank's baseless class action against the defendants in that the Debtors are bound to indemnify the Defendants.

40. Jaumot, Bayshore, Farlie Turner, and the Former Officers and Directors will continue to accrue fees that the estate will be forced to pay, until there is a final order absolving the Debtors of their indemnification liability.

41. Remedies at law are inadequate to compensate the Debtors because the Debtors will be unable to effectively distribute monies under the plan while subject to a potentially massive, unquantifiable administrative expense for the costs of indemnifying Jaumot, Bayshore, Farlie Turner, and the Former Officers and Directors for an indeterminable amount of time.

42. When balancing any hardships between the Frank and the Plaintiffs here, a remedy in equity is warranted because Frank had ample opportunity to make an objection to the sale, Plan or other administration of the bankruptcy or bring his action before this Court, and having failed to avail himself to those remedies should be enjoined from pursuing the class action in Canada.

43. Furthermore, the Debtors submit that the Committee's efforts at distributing funds to creditors under the plan, is placed in jeopardy if Frank is permitted to continue pursuing a Canadian class action that will accrue great indemnification costs to the estate.

44. The public interest will not be disserved by granting the Debtors' request for a permanent injunction. In fact, the grant of a permanent injunction will advance the strong public policy that debtors in possession be able to use indemnification clauses as leverage to engage competent financial advisors and management without being subject to the costs of defending a later party's frivolous lawsuit.

WHEREFORE, the Plaintiffs respectfully request that the Court enter a Judgment:

(A) permanently enjoining the Frank, or any other party, from pursuing the class action in Canada against Bayshore, Farlie Turner, Jaumot, and the Former Officers and Directors whose presence affects the administration of the bankruptcy;

(B) awarding Plaintiffs attorneys' fees and costs for prosecuting this proceeding; and

(C) granting such other and further relief as the Court deems just and proper.

Dated this 24th day of February, 2011.

        BERGER SINGERMAN, P.A.
        Attorneys for Plaintiffs
        200 S. Biscayne Boulevard, Suite 1000
        Miami, FL 33131
        Telephone: (305) 755-9500
        Facsimile: (305) 714-4340

        By: /s/ Jordi Guso
            Jordi Guso
            Florida Bar No. 863580
            jguso@bergersingerman.com

## **VERIFICATION**

STATE OF FLORIDA        )
                        ) ss:
COUNTY OF BROWARD       )

The undersigned does hereby verify under penalty of perjury that he has personal knowledge of the facts in the foregoing Verified Complaint and he verifies that they are true and correct.

FRANK E. JAUMOT,
Chief Restructuring Officer

The foregoing instrument was acknowledged before me this __21__ day of February, 2011, by Frank E. Jaumot. Chief Restructuring Officer of PPOA Holdings, Inc. He is personally known to me or has produced _____ as identification and took an oath.

Mary A. Fischer
Notary Public

Mary A. Fischer
Print Signature and Commission No.

My commission expires:



MARY A. FISCHER
MY COMMISSION # EE 026377
EXPIRES: October 25, 2014
Bonded Thru Notary Public Underwriters

3476948-3